1

THE HONORABLE ROBERT S. LASNIK

2

3

4

5

6

7

8

UNITED STATED DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10

NAVEEN MYSORE PRAKASH and
CHETANA VIVEKANAND DESAI,

11

Plaintiffs,

v.

12
13
14

SAVI TECHNOLOGIES, INC., VIGNA,
INC., RAVI PRATHIPATI and
JAGADEESH MUPPARAJU,

15

Defendants.

CASE NO.:  2:10-cv-01845 RSL

PLAINTIFF'S REPLY BRIEF IN
SUPPORT OF PARTIAL SUMMARY
JUDGMENT MOTION

16

## REPLY STATEMENT OF RELEVANT FACTS

17

18

19

20

21

22

Defendants repeatedly make two false statements on brief which are significant to this motion:  (1) that Naveen was "fully compensated by year-end the amount promised by Savi Technologies," Defendants' Opposition, p. 7, lines 9-10 and (2) that Naveen "was paid the predetermined salary of $120,000 that he was promised...." Defendants' Opposition at p. 2, lines 1-2 and 25-26; p. 3, line 1; p. 14, lines 9-10; p. 18 lines 4-5. Each is demonstrably false.

23

24

25

26

The mendacity of these statements is verified by review of Defendants' own table of payments, Ex. G to the Prathipati declaration submitted with the defense opposition (Docket No. 38).  If Naveen's salary was really $120,000 per year, and since he was paid twice monthly (24 times per year), his salary each pay period should have been $5,000

1

RALPH C. POND
AIKEN, ST. LOUIS & SILJEG, P.S.
ATTORNEYS AT LAW
1200 NORTON BUILDING
801 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 624-2650/FAX (206) 623-5764
POND@AIKEN.COM

(120,000/24=5,000).  According to defense Ex. G, Naveen was paid a total of $12,499.98 for the 6 pay periods in 2007, not the $30,000 due if his salary was $120,000 per year. This leaves a deficit of $17,500.02.  **It is clear on Ex. G that this deficit was not made up at the end of that year, but was carried over to 2008.**  Defense Ex. G also shows that in 2008, Naveen was then paid $125,096.24, $5,096.24 more than the newly asserted $120,000 salary.  This reduced the deficit to $12,403.78.  Moving to 2009, Exhibit G shows that Naveen was paid $33,592 for 6 pay periods, $3,592.00 more than the $30,000 due under defendants' latest theory.  This further reduced the deficit to $8,811.78, **which balance has never been paid to Naveen**.  Thus, even if defendants' theory is assumed, by the end of 2008 there remained a deficit of $12,403.78; when Naveen resigned in 2009 the deficit was $8,811.78, **which remains unpaid.**

This is confirmed by comparing the $180,000 Naveen should have been paid for the 18 months of Savi employment (according to Defendants' theory) with the Ex. G total paid for that time period: ($12,499.98+ $125,096.24+$33,592.00=**$171,188.22**).  So, the statement that Naveen was "fully compensated by **year end** the amount promised by Savi…" in Defendants' Opposition at p. 7, lines 9-10 **is absolutely false as to any year.** Also blatantly false are the repeated statements that Naveen "was paid the predetermined salary of $120,000 that he was promised…." Defendants' Opposition at p. 2, lines 1-2 and 26-26; p. 3, line 1; p.18 lines 4-5.[1]

Defendant Ravi Prathipati admitted the underpayment in deposition.  When viewing this same defense spreadsheet, he admitted that Savi **did not** pay Naveen even the $120,000 per year Defendants now claim was his salary, and that he did not even know then how much was still owed!  Prathipati Dep., p. 115, line 7 to p. 118, line 25.

---

[1] Such false statements of fact on brief directly contrary to the evidence are sanctionable under CR 11(b)(3).

RALPH C. POND
AIKEN, ST. LOUIS & SILJEG, P.S.
ATTORNEYS AT LAW
1200 NORTON BUILDING
801 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 624-2650/FAX (206) 623-5764
POND@AIKEN.COM

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Defendants also make assertions which are vigorously disputed as though they are established facts. These include: that "Plaintiff Naveen was aware of the payment structure and agreed to the same" and "Plaintiff Naveen did not dispute the payment structure during the time he worked for Savi Technologies." Def. Opposition, p. 2, lines 21-22; p. 21, lines 4-5. As detailed in the Reply Declaration of Naveen Mysore Prakash, he never agreed to delayed payment; he has consistently maintained his position that he was promised an hourly rate of $64.80 hour, and that he tracked his hours because Defendant Prathapati promised he would be paid that amount for all hours worked, and instructed him to track his hours and provide spreadsheets showing the amounts owed. Id. Mr. Prathipati admitted in deposition he received those spreadsheets from Naveen. Prathipati Dep. p. 96, line 12 to p. 98, line 2; p. 98, line 11 to p. 99, line 19. Defendants also assert that Naveen was given a form Letter of Employment, which he never returned. Def. Opposition, pp. 5-6. But, the unsigned form Letter of Employment submitted as Exhibit D to Defendant Prathipati's declaration had not been previously produced, either with Defendants' Initial Disclosures, nor in response to Plaintiff's Requests for Production, nor after it was requested in deposition. Webster Reply Dec.

Also, defendants' new position that Naveen was hired at a salary of $60,000 per year, then raised to $120,000 per year, is inconsistent with their answers to Plaintiff's Interrogatories Nos. 3 and 4. There Defendants twice stated: "Naveen was hired as a salaried exempt employee with a yearly compensation amount of $120,000." *See* Exhibit B to the original Webster declaration, pp. 5-6 (Docket No. 28). And, contrary to Defendants' assertion at p. 7, line 17, Naveen is currently being paid on an hourly, not salaried, basis by Ingenium to do the same work. Naveen Reply Dec.

**ARGUMENT**

The points raised in defendants' response are addressed in the order raised (or not addressed at all).

RALPH C. POND
AIKEN, ST. LOUIS & SILJEG, P.S.
ATTORNEYS AT LAW
1200 NORTON BUILDING
801 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 624-2650/FAX (206) 623-5764
POND@AIKEN.COM

1

2

3

**A.      To Show Salary Basis, the Employer Must Prove the Employee "Regularly Received" the "Full Amount" of his "Predetermined" Pay for "Any Week in Which he Performed Work."**

4      Defendants devote many pages of briefing to their arguments that Naveen meets

5   the "duties" test for the computer professional exemption, and that he could have been

6   paid hourly so long as his hourly wage was at least $27.63/hour.   But, as noted in

7   Plaintiff's opening brief on this motion, those issues are not presented by this motion,

8   because plaintiff concedes there are material fact issues regarding Naveen's duties, and

9   because defendants admitted in sworn interrogatory answers that Naveen was paid on a

10   "salary basis," precluding application of the "$27.63/hour" **hourly** exemption analysis.[2]

11      Yet defendants fail to adequately address the plain language of 29 C.F.R. §

12   541.602, and the functionally identical WAC 296-128-532, both of which provide that to

13   satisfy the "salary basis" test, the employer must prove **all** of the following:   (1) that the

14   employee "regularly receives" (2) "each pay period on a weekly, or less frequent basis,"

15   (3) "a predetermined amount constituting all or part of the employee's compensation....,"

16   and (4) that the employee receives "full salary for any week in which the employee

17   performs any work."   Defendants consistently ignore the "regularly receives" language,

18   and, remarkably, omit the "full salary for any week in which the employee performs any

19   work" sentence when they quote 29 C.F.R. § 541.602 on brief!   Def. Opposition, p. 15,

20   line 18.     They address only the "predetermined amount" prong, while incorrectly

21   claiming that *plaintiff* focused "solely" on that prong on brief.   Def. Opposition at p. 14.

22   So, defendants would have the court believe that as long as the employer regularly pays

23   some kind of installment toward a "predetermined" annual salary that is unrelated to the

24   hours actually worked, even if the full amount promised is never paid, the employer has

25

26

---

[2] Even if defendants had chosen to rely on this basis for exemption they could not carry their burden, because Naveen was paid less than $27.63/hour during 12 of the 36 pay periods he was employed by Savi. *See* Exhibit B to Naveen's original declaration (Docket No. 27).

RALPH C. POND
AIKEN, ST. LOUIS & SILJEG, P.S.
ATTORNEYS AT LAW
1200 NORTON BUILDING
801 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 624-2650/FAX (206) 623-5764
POND@AIKEN.COM

1   carried its burden of proving salaried status.  If defendants are correct, then 29 C.F.R. §

2   541.602 and WAC 296-128-532 really mean this:

> "Salary" is where an employee regularly receives, each pay period on a weekly, or less frequent basis, *some portion of* a predetermined *annual* amount constituting all or part of the employee's compensation…An exempt employee must receive *whatever portion of the annual salary the employer chooses to pay at the time* for any week in which the employee performs any work, without regard to the number of days or hours worked. *Even if the employer never pays the full salary promised, the employee is still deemed to be compensated on a "salary basis".*

8   To support this fanciful interpretation, Defendants cite *Bergquist v. Fidelity*

9   *Information Svcs.,* 399 F. Supp. 2d 1320 (M.D.Fla. 2005), and attempt to distinguish the

10  two Ninth Circuit decisions cited in Plaintiffs' opening brief, *Hurley v. State of Oregon,*

11  27 F.3d 392 (9th Cir. 1994) and *Hodgson v. Baker,* 544 F.2d 429 (9th Cir. 1976).

12  *Bergquist* is neither instructive nor persuasive.  There, the plaintiff "received his salary

13  in predetermined amounts in either twenty-four or twenty-six pay periods" over a 3- year

14  span.  The amounts paid were consistent with an offer letter stating his salary would be

15  $29,000 per year.  300 F. Supp. 2d at 1333.  So, salary basis was found.  Id.  This

16  presents a stark contrast to the wildly fluctuating *ad hoc* payments received by Naveen

17  here, which defeat salary basis.

18  Defendants also make much of the fact that in *Hurley*, the central issue was

19  whether deductions from salary for "economic sanctions" in future pay periods defeated

20  salaried status.  But just as they omitted the critical "full salary for any week in which the

21  employee performs any work" requirement of 29 C.F.R. § 541.602 on brief, defendants

22  miss the key ruling in Hurley which applies with equal force to the facts of this case:

23  "Because Class members did not receive their "full salary" during the weeks in which a

24  reduction in their established compensation was in force, they may not be classified as

25  salaried employees." 27 F.3d at 395.  Thus, the critical fact defeating exemption is that

26

RALPH C. POND
AIKEN, ST. LOUIS & SILJEG, P.S.
ATTORNEYS AT LAW
1200 NORTON BUILDING
801 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 624-2650/FAX (206) 623-5764
POND@AIKEN.COM

the employee did not receive "full salary" each week.   This is confirmed by later language in the decision:

> As we have seen above, an employer may reduce an executive, administrative, or professional employee's salary only for violations of "safety rules of major significance." Otherwise, compensation that is *subject* to change by the employer at the end of each pay period is simply not a "salary" - under the applicable regulation or the plain meaning of that term. The state cannot be permitted to circumvent the express language and clear purpose of the regulations with its artificial distinction, regardless of its ingenuity.

Id. (italics in original).[3]

Hodgson, supra, is similarly instructive.   Like Naveen, Mr. Hodgson was paid fluctuating amounts by Ross Baker Towing, so the employer could not satisfy the salary basis test. 544 F.2d at 434.   Defendants highlight one fact in that case:   that the government/plaintiff noted the payments were bigger when he worked more hours.   But in ruling that the employer failed to prove exemption, the Ninth Circuit did not focus on any correlation between increased hours and increased pay, but on pay periods where Mr. Hodgson received less than the stated "predetermined amount."   The Court observed that: [a]lthough Ross Baker did testify that Mr. Davis was paid $190 to $200 per week, the payroll records of the company do not verify this. On several occasions he was paid fluctuating amounts which were much less than $200" and "For 27 of the 49 semi-monthly pay periods during the two years in question he received less than $411.66, the semi-monthly equivalent of the claimed $190 per week salary. Under the circumstances, we find that the employer has failed to carry his burden in proving that Davis was exempt under the Act." Id. Both *Hurley* and *Hodgson* teach that failure to regularly pay the level

---

[3] Defendants also footnote the fact that one narrow component of the holding in *Hurley* was functionally overruled by the U. S. Supreme Court in *Auer v. Robbins*, 519 U.S. 452, 460, 117 S. Ct. 905, 137 L.Ed 2d 79 (1997). *Stanley v. City of Tracy*, 120 F.3d 179, 183-84 (9th Cir. 1997).   But, that component was the ruling that the presence of an improper deduction policy, even without any actual unlawful deductions, defeated salaried status. That component of the ruling is not relevant to the facts here, as there is no dispute that Naveen's pay, in fact, wildly fluctuated.

6

RALPH C. POND
AIKEN, ST. LOUIS & SILJEG, P.S.
ATTORNEYS AT LAW
1200 NORTON BUILDING
801 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 624-2650/FAX (206) 623-5764
POND@AIKEN.COM

1    predetermined amount" defeats exemption, unless a deduction results from the only

2    authorized exception:  violation of "safety rules of major significance."

3           Defendants also argue that the "all or part of the employee's compensation"

4    language allows the employer to pay whatever portion of the "predetermined amount" is

5    convenient at the time, yet satisfy the salary basis test. This cannot be reconciled with the

6    "full salary for any week in which the employee performs any work" requirement.

7    Defendants' construction fails to give meaning to **all** of the regulatory language, as is

8    required when construing statutes and regulations. *TRW Inc. v. Andrews*, 534 U.S. 19,

9    31, 122 S. Ct. 441, 151 L. Ed. 2d 339 (2001) ("It is a cardinal principle of statutory

10   construction that a statute ought, upon the whole, to be so construed that, if it can be

11   prevented, no clause, sentence, or word shall be superfluous, void, or insignificant."

12   (quoted in *Cooper v .FAA,*  596 F.3d 538 (9th Cir. 2011). It is thus apparent that the "all

13   or part of the employee's compensation" language refers to "salary plus bonus" or "salary

14   plus benefits plus bonus" arrangements, where "part" of the employee's compensation is

15   a level, predetermined salary, but the balance includes a bonus or specified benefits.  It

16   does not relieve employers of the obligation to pay the "full salary" when due.

17          Notably, defendants cite no authority from the Ninth Circuit or any other court

18   which supports their incredible position that so long as an employee "regularly receives"

19   **some portion** of a "predetermined" annual salary, even if he is never paid the full

20   "predetermined" amount, the salary basis test is satisfied.[4]  Indeed, it is remarkable that

21   defendants nowhere cite any Ninth Circuit authority on brief except in a footnote!

22          Moreover, defendants' position cannot be reconciled with applicable state and

23   federal law requiring prompt payment of wages.  WAC 296-126-023(3) reads, in relevant

24   part: "An employer shall pay all wages owed to an employee on an established regular

25

26   ───────────────────────

[4] Defendants cite *In re Walmart Stores*, 395 F.3d 1177 (10th Cir. 2005) for the proposition that prospective seasonal salary adjustments do not defeat salaried status.  But defendants' theory here is not that Naveen's salary was ever adjusted, just that it was o.k. to pay him whatever portion of his salary due that felt good at the time.

7

RALPH C. POND
AIKEN, ST. LOUIS & SILJEG, P.S.
ATTORNEYS AT LAW
1200 NORTON BUILDING
801 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 624-2650/FAX (206) 623-5764
POND@AIKEN.COM

1   pay day at no longer than monthly payment intervals. If federal law provides specific

2   payment interval requirements that are more favorable to an employee than the payment

3   interval requirements provided under this rule, federal law shall apply." The FLSA

4   imposes the same prompt payment requirement: "by the next payday." *Biggs v. Wilson,* 1

5   F.3d 1537, 1542-42 (9th Cir. 1993). Indeed, the obligation to pay FLSA liquidated

6   damages "immediately arises" when an employer fails to pay "on any payment date the

7   full amount due." Id., at 1542 (quoting *Atlantic Co. v. Broughton,* 146 F.2d 480 (5th Cir.

8   1944). Surely an employer who fails to regularly and timely pay the predetermined

9   salary amount forfeits the protection of salaried status.

10  **B.       FLSA and MWA Rights Cannot be Waived.**

11          Defendants also argue that Naveen agreed to allow defendants to pay him

12  whenever it was convenient.    But, as detailed above, wage/hour law guarantees timely

13  payment, and the FLSA enforces that rule with liquidated damages.    And, wage/hour

14  rights cannot be waived, even through collective bargaining agreements. *Brooklyn*

15  *Savings Bank v. O'Neal,*  328 U.S. 697, 707, 65 S. Ct. 895, 89 L. Ed 2d  1296 (1945);

16  *Huntley v. Frito-Lay, Inc.,* 96 Wn. App. 398, 402 (1999). This includes the right to be

17  timely paid. "The fact that defendants may have intended to pay the employees at some

18  future date, or that some employees might have acquiesced, albeit grudgingly, to deferred

19  payment, has no bearing on the fact that that statute was violated." *Donovan v. Kaszycki*

20  *& Sons,* 599 F. Supp. 860, 860 (S.D. N.Y. 1984)(quoted with approval by the Ninth

21  Circuit in *Biggs, supra,* 1 F.3d at 1542.

22          When the plain language of the federal and state "salary basis" definitions is

23  sensibly read, in light of the instruction in those two Ninth Circuit decisions, and the

24  federal and state requirements that employees be timely paid wages earned, the only

25  reasonable reading of 29 C.F.R. § 541.602 and WAC 296-128-523 is this:  to preserve

26  salaried status, an employer must pay to the employee a level, predetermined amount

RALPH C. POND
AIKEN, ST. LOUIS & SILJEG, P.S.
ATTORNEYS AT LAW
1200 NORTON BUILDING
801 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 624-2650/FAX (206) 623-5764
POND@AIKEN.COM

1  each pay period, and pay the full proportionate amount of that predetermined salary in

2  any week in which any work is performed.   Given that employers bear the burden of

3  proving exemption, *Donovan v. Nekton, Inc.,* 703 F.2d 1148, 1151 (9th Cir. 1983),

4  exemptions are narrowly construed against an employer who seeks to assert them,

5  *Cleveland v. City of Los Angeles,* 420 F.3d 981, 988 (9th Cir. 2005), and exemptions are

6  not to be found except on facts which are "plainly and unmistakably" within both "the

7  terms and the spirit" of the exemption requirements, *Id.,* failure to "regularly" pay the

8  employee the "full" "predetermined amount" for any week in which he performs work

9  surely defeats salaried status.   Defendants' position, supported by nary a Ninth Circuit

10  citation, is simply wrong.

11  **C.   The "Highly Compensated Employee" Exemption Also Employs the
    Salary Basis Test.  And, the MWA Contains no "Highly Compensated**
12  **Employee" Exemption.**

13  Defendants urge that Naveen is exempt as a "highly compensated professional"

14  under the FLSA.  Defendants fail to advise the Court that the plain language of 29 CFR §

15  541.601 provides that a "highly compensated employee" must still be compensated "on a

16  salary or fee basis…"  So, defendants must still satisfy the salary basis test regardless of

17  whether they "hang their hat" on the computer professional or the highly compensated

18  employee exemption. Thus, it adds nothing to the analysis other than a redundant basis

19  for FLSA exemption **if** defendants prove they satisfied the salary basis test.

20  But, the MWA does not recognize a "highly compensated employee" exemption.

21  *See* Comparison:  Washington State and New Federal Overtime Rules chart published by

22  the Washington Department of Labor & Industries, attached as Ex. A to the Pond Dec.

23  So, even if the exemption applied to Naveen's FLSA claims, it does not apply to his

24  MWA claims.  It has no impact on the outcome of this motion.

25  **D.   There is no Bona Fide Dispute.**

26  Defendants argue that Naveen agreed to accept sporadic payment of his alleged

RALPH C. POND
AIKEN, ST. LOUIS & SILJEG, P.S.
ATTORNEYS AT LAW
1200 NORTON BUILDING
801 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 624-2650/FAX (206) 623-5764
POND@AIKEN.COM

salary, and this creates a bona fide dispute preventing a finding of willfulness under the WRA. While Naveen vigorously disputes the assertion that he made any such agreement (Naveen Reply Dec.), his right to receive timely payment under federal and state wage/hour law cannot be waived. *Brooklyn Savings Bank v. O'Neal,* supra; *Huntley v. Frito-Lay, Inc., supra*; *Biggs, supra.* So, any such agreement is void.

Moreover, despite their patently false statements on brief to the contrary, defendants have admitted that **not all** compensation payable to Naveen *even under their new "120k/year salary" theory,* has been paid. *See* Exhibit G to Defendant Prathipati's declaration, and the Prathipati Transcript, p. 115, line 7 to p. 118, line 25. (Exhibit A to the Webster Reply Dec.). As described above, this totals at least $8,811.78, plus pre-judgment interest. The defendants also admit under oath that they made a conscious choice to delay payment to Naveen: his "compensation amounts were dictated by cash flow and payment received from clients." Defendants' response to Interrogatory No. 4 (Exhibit B to the initial Webster Dec., Docket No. 28). This is willful, as a matter of law.

**E.     The Individual Defendants Concede They Are Personally Liable Under Both the MWA and the WRA.**

Defendants address plaintiff's argument that the individual defendants are personally liable under the MWA and WRA only in their footnote 9, where they concede that "Defendants do not dispute the statutory provisions providing for personal liability upon a finding of willful withholding of wage...". Defendants' Opposition, p. 21. And, they do not respond at all to the arguments in plaintiff's opening brief that the individual defendants are personally liable under the MWA, regardless of any finding of willfulness. Under Local Rule 7(b)(2), "If a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit." Given defendants' concession with regard to the WRA, and their failure to respond to arguments regarding the MWA, plaintiff's motion on this issue is effectively unopposed.

RALPH C. POND
AIKEN, ST. LOUIS & SILJEG, P.S.
ATTORNEYS AT LAW
1200 NORTON BUILDING
801 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 624-2650/FAX (206) 623-5764
POND@AIKEN.COM

**F.    Attorney Charles Kuck's Letter is Both Authentic and Admissible.**

Unable to explain the admission that Naveen was an *hourly* employee who was "paid overtime at one and one-half times his regular rate of pay," in Charles Kuck's April 1, 2010 letter, defendants argue that the letter was not properly authenticated, and is inadmissible hearsay. The letter is both undeniably authentic, and admissible.

Defendants cite only Washington law in support of their motion to strike. But, it is fundamental under the Erie doctrine that federal evidence law applies in federal court. *Feldman v. Allstate Ins. Co.,* 322 F.3d 660, 666 (2003).   Under FRE 901(a), authentication only requires evidence "sufficient to support a finding that the matter in question is what the proponent claims it is." And, FRE 903 specifically states that a writing need not be authenticated by the "subscribing witness." The fact that Mr. Webster received Mr. Kuck's April 1 2010 letter, on Kuck's letterhead, in response to his March 22, 2010 demand letter to Savi Technologies, Inc., is ample evidence to support a finding that it is, in fact, a letter from counsel for Savi. Indeed, the Washington decision cited by Defendants held only that counsel cannot authenticate a letter from another lawyer to an insurance investigator, because that lawyer was neither an author nor recipient of the letter. 122 Wn. App. at 750. But here, Mr. Webster was both the addressee and recipient of the letter from Savi's Atlanta attorney Charles Kuck.

Moreover, Defendant Prathipati confirmed the authenticity of the letter when deposed on April 21, 2011. He testified that he received Mr. Webster's demand letter (p. 122, line 22-p. 123 line 1), that he engaged Mr. Kuck to prepare the responsive letter (p. 123, lines 2-5), that he provided the information to Mr. Kuck for the letter (p. 123 line 6-p. 124 line 6), and that he saw the letter at the time it was sent (p. 124, lines 11-13;  p. 126, lines 11-13). But, he now claims to disagree with its contents, apparently because Defendants are now trying to rewrite the facts in a clumsy attempt to avoid liability. Prathipati Dep. pp. 122-126, Exhibit A to the Webster Reply Dec.   Given Defendant

RALPH C. POND
AIKEN, ST. LOUIS & SILJEG, P.S.
ATTORNEYS AT LAW
1200 NORTON BUILDING
801 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 624-2650/FAX (206) 623-5764
POND@AIKEN.COM

1   Prathipati's admissions, Defendants' arguments that the letter is not genuine are

2   remarkably disingenuous.

3        The letter is also admissible under FRE 801(d)(2)(C) and (D), as an admission of

4   a party opponent by one authorized by the party to make the statement. As noted above,

5   Defendant Prathipati testified that he engaged Mr. Kuck to respond to Jess Webster's

6   letter, supplied the information contained in the letter, and authorized him to send it.

7   Prathipati Dep., p. 123, line 2 to p.124 line 6. This satisfies the foundation requirements

8   of the rule. *Dailey v. Societe Generale,* 915 F.Supp. 1315, 1324 (S.D.N.Y.1996) (general

9   counsel's statement is admission under Rules 801(d)(2)(C) and (D)); *See also, Giles v.*

10  *Thompson,* 2010 WL 3063283 (S.D. Cal. 2010) ("An attorney may, of course, act as an

11  ordinary agent and as such make evidentiary admissions admissible against his principal.

12  Rule 801(d)(2) (C ) and (D)").

13       Defendants urge that statements by counsel are not "binding upon [the] client"

14  and do not constitute an "admission." Def. Opposition, p. 23. They conflate whether the

15  letter is "binding" or a conclusive "judicial admission" with whether it is admissible. As

16  detailed above, it is admissible, and so is properly considered in support of this motion.

17  Defendants' motion to strike should be denied.

18                              **CONCLUSION**

19       For these reasons, the partial summary judgment motion should be granted.

20       DATED this 6th day of May, 2011.

21  MIKKELBORG  BROZ  WELLS  FRYER,   AIKEN, ST. LOUIS & SILJEG, PS
    PLLC

22

23

24  By:_____          By:_____

25  Jess G. Webster, WSBA No. 11402         Ralph C. Pond, WSBA No. 11934
    Lafcadio Darling, WSBA No. 29963

26  Attorneys for Plaintiff Naveen Mysore Prakash and Chetana Vivekanand Desai

                              12

RALPH C. POND
AIKEN, ST. LOUIS & SILJEG, P.S.
ATTORNEYS AT LAW
1200 NORTON BUILDING
801 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 624-2650/FAX (206) 623-5764
POND@AIKEN.COM